UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| KEISHA PICKETT | CIVIL ACTION NO. 1:08-cv-00872 |
| -vs- | JUDGE DRELL |
| UNITED STATES OF AMERICA, et al. | MAGISTRATE JUDGE KIRK |

## RULING

Pending before the Court is a Motion to Dismiss or in the Alternative, For Summary Judgment (Doc. 17), filed by the defendant United States of America. For the reasons that follow, the defendant's motion will be GRANTED IN PART AND DENIED IN PART. Disposition will follow by a separate judgment.

I. **Background**

The plaintiff in this case, Ms. Keisha Pickett ("Ms. Pickett"), brought this lawsuit on behalf of her late father, Mr. Ernest Pickett ("Mr. Pickett"). Originally named as defendants in this case were the United States of America ("government"), Pearlie Whitten ("Whitten"), Sadie Williams Joffrion ("Joffrion"), and Andrew Ballot ("Ballot"). The three individual defendants were dismissed by orders of the Clerk of Court (Docs. 9, 10) as a result of Ms. Pickett's failure to take a default judgment against Ballot and failure to timely serve Whitten and Joffrion. However, on December 29, 2010, the court granted (Doc. 32) Ms. Pickett's Motion to Reinstitute Defendant Pearlie Whitten (Doc. 27), once again making her a party to this lawsuit.

Ms. Pickett filed her original complaint on June 18, 2008 (Doc. 1), alleging that

Mr. Pickett "died on May 16, 2006, as a direct result of negligence on the part of the Veterans' Administrations . . . Medical Center ["VAMC"] - Alexandria, through its agents and employees." (Doc. 1, p. 1). Mr. Pickett was a resident at the VAMC in New Orleans, Louisiana, where he underwent a procedure to amputate both of his legs. In the wake of Hurricane Katrina, Mr. Pickett was transported to the VAMC in Alexandria, Louisiana.

According to the complaint, Whitten and Joffrion were both nurses at the VAMC Alexandria. Shortly prior to Mr. Pickett's death, Whitten and Joffrion moved Mr. Pickett out of the VAMC and into a home at 3919 Carlton Street in Alexandria, Louisiana. Ballot was the owner of the home, which he rented to Whitten. Ms. Pickett maintains that Mr. Pickett's removal and replacement was conducted in the course and scope of Whitten and Joffrion's employment with the VAMC Alexandria, and under the auspices of providing continuing care to Mr. Pickett in the home. Mr. Pickett was allegedly transported from the home to the VAMC for care each day, and spent each evening in the home.

Tragically, on May 16, 2006, the home caught fire, and Mr. Pickett was killed. Ms. Pickett now seeks monetary relief under various theories of negligence. As the complaint pertains to the government, and under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*, Ms. Pickett claims that the VAMC Alexandria should be held accountable for the damages caused by the negligent acts of its employees.

The government filed the instant motion to dismiss or for summary judgment

on June 5, 2009, arguing that: (1) any acts of negligence by Whitten and Joffrion were not committed in the scope of federal employment; (2) the acts referenced in the complaint were intentional, rather than negligent acts; and (3) Ms. Pickett's negligent hiring claims are barred by federal statute. The government is careful to note, and we acknowledge, that the motion is not filed on behalf of any of the individual defendants, but rather, is filed solely on behalf of the government. Therefore, we analyze only the claims against the government, and not the individual defendants. Those claims include: (1) "[f]ailure to properly train and supervise its employees," (2) "[a]llowing its employees to remove patients from hospital facilities under the pretense of ongoing medical care," (3) [f]ailure to act when it should have had reasonble knowledge of the danger that its patient, Ernest Pickett, was in," (4) "[n]egligent hiring of employees without conducting proper background checks," and (5) "[a]ny and all other acts of negligence on its part, or the part of its employees, agents or subcontractors that may be proven at the trial of this matter." (Doc. 1, pp. 3-4). After carefully considering the evidence and the parties' filings, the Court is prepared to rule on the pending motion.[1]

II. **Law and Analysis**

    A. **Standard of Review**

Pursuant to Fed. R. Civ. P. 12(b)(1), a party may obtain dismissal of a claim for "lack of subject-matter jurisdiction." In deciding a Rule 12(b)(1) motion, the Court

---

[1] Given the scant record before the Court, we decline to decide the motion under the procedures designated by Fed. R. Civ. P. 56(c). Instead, we will evaluate the motion as one to dismiss under Rule 12(b)(1).

may consider evidence outside of the pleadings and the attachments thereto. Ambraco, Inc. v. Bossclip B.V., 570 F.3d 233, 237-38 (5th Cir. 2009). More specifically, "under Rule 12(b)(1), the court may find a plausible set of facts by considering any of the following: '(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" Lane v. Halliburton, 529 F.3d 548, 557 (5th Cir. 2008) (quoting Barrera-Montenegro v. United States, 74 F.3d 657, 659 (5th Cir. 1996)). However, when the Court must refer to matters outside of the pleadings, "no presumptive truthfulness attaches to the plaintiff's allegations, and the court can decide disputed issues of material fact in order to determine whether or not it has jurisdiction to hear the case." Montez v. Dep't of Navy, 392 F.3d 147, 149 (5th Cir. 2004).

**B.     Sovereign Immunity and the FTCA**

It is well settled that "'the United States as sovereign, is immune from suits save as it consents to be sued.'" Creel v. United States, No. 07-60703, 2010 WL 685615, at *2 (5th Cir. Mar. 1, 2010) (quoting Linkous v. United States, 142 F.3d 271, 275 (5th Cir. 1998)). "'Absent a waiver of sovereign immunity, the federal government is immune from suit.'" Wagstaff v. U.S. Dep't of Educ., 509 F.3d 661, 664 (5th Cir. 2007) (quoting Lewis v. Hunt, 492 F.3d 565, 570 (5th Cir. 2007)).

The FTCA constitutes a limited wavier of the federal government's immunity from suit. See Linkous, 142 F.3d at 275. "Under the FTCA, Congress has waived sovereign immunity and has granted consent for the government to be sued for acts

committed by any 'employee of the Government while acting within the scope of his office or employment.'" Id. (quoting 28 U.S.C. § 1346(b)). Put another way, "[t]he FTCA abrogates the Government's sovereign immunity for torts committed by its employees in circumstances where, if the Government were a private person, the Government would be liable under state law." Martin v. Halliburton, No. 09-20441, 2010 WL 1038565, at *7 (5th Cir. Mar. 23, 2010).

Finally, we observe that "[c]ourts must strictly construe all waivers of the federal government's sovereign immunity, and must resolve all ambiguities in favor of the sovereign." Id. Therefore, the limited waiver of sovereign immunity found in the FTCA must be strictly construed in favor of the federal government. See Leleux v. United States, 178 F.3d 750, 754 (5th Cir. 1999).

### C. Intentional Torts Exception

The FTCA contains a number of statutory exceptions, one of which is commonly referred to as the "intentional torts exception." Castro v. United States, 560 F.3d 381, 386 (5th Cir. 2009).[2] Pursuant to 28 U.S.C. § 2680(h), the limited waiver of sovereign immunity in the FTCA does not apply to "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights."

#### 1. *Liability for the Intentional Torts of Employees*

In this case, Ms. Pickett states claims against Whitten and Joffrion for

---

[2] The exceptions to the FTCA may not be waived, and if applicable, deprive the court of subject matter jurisdiction. *In re* Supreme Beef Processors, Inc., 468 F.3d 248, 252 (5th Cir. 2006).

"[c]onversion of Mr. Pickett's personal funds for their own use," and for "[t]heft of social security funds provided for Mr. Pickett's care." (Doc. 1, p. 4). The plaintiffs concede that these acts were intentional, and therefore, are not compensable under the intentional tort exception to the FTCA. To the extent that Ms. Pickett's claims seek to impose liability upon the government for the intentional torts of Whitten and Joffrion through their alleged employment relationship with the government, the government's motion to dismiss is GRANTED.

2. *Claims "Arising From" Intentional Torts*

The government next points out that acts "arising from" intentional torts are exempted under the FTCA. See 28 U.S.C. § 2680(h). Under this provision, the government argues that "[a] claim for negligent hiring, retention, and supervision of a government employee who commits an intentional tort, falls within the exception to the FTCA." (Doc. 17-1, p. 7).

In principle, the government is correct that "[o]nly negligent conduct, undertaken within the scope of employment and *unrelated to an excluded tort under § 2680(h)*, may form the basis of a cause of action." Leleux, 178 F.3d at 757. The Supreme Court has long held that the intentional tort exception extends to claims that "sound in negligence but stem from a battery committed by a Government employee." United States v. Shearer, 473 U.S. 52, 55 (1985). However, the Court has also held that "the negligence of other Government employees who allowed a foreseeable assault and battery to occur may furnish a basis for Government liability that is entirely independent of [the tortfeasor's] employment status." Sheridan v.

United States, 487 U.S. 392, 401 (1988). These standards mandate a searching analysis of the alleged intentional act and the employment relationship between the tortfeasor and the government.[3]

For instance, in Leleux, the Fifth Circuit rejected the FTCA claims of a plaintiff, Leleux, who had contracted venereal disease after engaging in consensual sexual intercourse with a Naval officer, Sistrunk, because her claims arose out of an intentional tort. See 178 F.3d at 758. Specifically, the court precluded the following claims against the Navy: (1) "negligent failure to inform Leleux of regulations covering the conduct of Navy personnel," (2) "negligent failure to protect Leleux from Sistrunk's misuse of his position,"(3) "negligent training and supervision," and (4) "negligent 'authoriz[ation]' of Sistrunk's conduct." Id. at 757-58. The court reasoned that "negligence claims related to a Government employee's § 2680(h) intentional tort may proceed where the negligence arises out of an independent, antecedent duty unrelated to the employment relationship between the tortfeasor and the United States." Id. at 757. Because the plaintiff failed to "allege that the Government had any duty to protect her independent of its employment relationship with Sistrunk," or to reference a "regulation or duty assumed by the Navy that concerns the Navy's responsibility for the welfare of third parties," she could not state a viable FTCA claim. Id. at 758.

Here, Ms. Pickett states a number of claims against Whitten and Joffrion,

---

[3] As applied in this context, the Fifth Circuit has held that the FTCA does not apply to circumstances in which the plaintiff "frames its claim as one of negligent supervision and training, [but] its claim arises out of the misrepresentation and deceit of [the tortfeasor]." Saks, Inc. v. United States, 218 F .App'x 350, 351 (5th Cir. 2007).

7

including intentional torts and acts of negligence. At first glance, it would appear that any claim "arising out of" alleged theft or conversion committed by either of the nurses would not actionable under the intentional torts exception.

However, the question remains whether the government assumed a duty to Mr. Pickett that was independent of its employment relationship with Whitten and Joffrion. As the Leleux court interpreted the Sheridan decision, Ms. Pickett must show that the government assumed an "independent, antecedent duty unrelated to the employment relationship between the tortfeasor and the United States." Leleux, 178 F.3d at 757. The Supreme Court in Sheridan held that the government could be held liable under the FTCA for negligently failing to prevent an off-duty serviceman from shooting the plaintiff. 487 U.S. at 393-94, 403. The Court reasoned that, because the Navy had passed regulations prohibiting the possession of firearms on the base, and because it "voluntarily undert[ook] to provide care to a person who was visibly drunk and visibly armed," it had also "assumed responsibility to perform [its] good Samaritan task in a careful manner." Id. at 401 (internal quotation omitted). This independent duty justified imposition of liability for the intentional tort under the FTCA. See id. at 401-02; contra. Leleux, (holding that, because the plaintiff failed to identify a "regulation or duty assumed by the Navy that concerns the Navy's responsibility for the welfare of third parties," she was not entitled to recover against the government for the intentional tort of a Naval Officer).

In this case, Mr. Pickett was a patient of the VAMC Alexandria, who purportedly hired Whitten and Joffrion, and certainly treated Mr. Pickett. We find, at

8

least at this juncture, that the VAMC Alexandria adopted a similar independent duty to Mr. Pickett as the duty adopted by the Navy in Sheridan. "Whether the United States owed an independent duty to the plaintiffs is a question of . . . state law." Bodin v. Vagshenian, 462 F.3d 481, 484 (5th Cir. 2006) (citing See 28 U.S.C. § 1346(b)(1)). Under Louisiana law, "[a] hospital is bound to exercise the requisite amount of care toward a patient that the particular patient's condition may require,' and to protect the patient from 'external circumstances peculiarly within the hospital's control.'" Smith v. State of La., 523 So. 2d 815, 819 (La. 1988) (quoting Hunt v. Bogalusa Cmty. Med. Ctr., 303 So. 2d 745, 747 (La. 1974).[4] More specifically, hospitals are obligated to protect patients "from dangers that may result from the patient's physical and mental incapacities as well as from external circumstances peculiarly within the hospital's control." Gleason v. La. Dep't of Health and Hosps., No. 44,947-CA, 2010 WL 798047, at *5 (La. App. 2d Cir. Mar. 10, 2010). This duty may extend to foreseeable injuries inflicted by third persons. See Higginbotham v. Rapides Found., 968 So. 2d 1226, 1232 (La. App. 3d Cir. 2007) (holding that a hospital could not have "reasonably foreseen" the mugging of a patron on a nearby public street). These duties exist independently of the hospital's employment relationship with its employees who may inflict torts upon patients.

Notably, the Fifth Circuit has reversed a trial court's judgment dismissing a plaintiff's FTCA claim for lack of subject matter jurisdiction under similar circumstances. Bodin, 462 F.3d at 484. In that case, two plaintiffs alleged that a VA

---

[4] As a general matter, hospitals may be held liable for the negligent acts of nurses. See Odom v. State ex rel. Dep't of Health and Hosps., 733 So. 2d 91, 96 (La. App. 3d Cir. 1999).

9

psychiatrist had repeatedly "performed illegal, inappropriate, and unnecessary physical examinations of their genitalia." 462 F.3d at 483. Following a bench trial, the district judge dismissed the plaintiffs' claims for lack of subject matter jurisdiction under various exceptions to the FTCA, including the intentional tort exception. See id. The court concluded that the district court had erred in applying the intentional tort exception, because the VAMC was potentially liable based upon various "theories of liability [which did] not depend on the employment status of the assailant." Id. at 489.[5] Therefore, the court found that "[t]he United States could be held liable whether the plaintiffs were sexually assaulted by its employee or a third-party tortfeasor." Id.

We now rule in accord with the Bodin court's reasoning. Ms. Pickett alleges that the government negligently hired Whitten and Joffrion, failed to train and supervise them, allowed them to improperly remove a patient from a hospital, and failed to protect Mr. Pickett while knowing that he was in serious danger in the home. In support of her contentions, Ms. Pickett submits VAMC Alexandria medical records evidencing at least some degree of concern for Mr. Pickett's mental and physical welfare, his living conditions, and his competency to make medical decisions.[6] Moreover, Ms. Pickett contends that the VAMC Alexandria was, or

---

[5] The independent theories of liability under Texas law referred to by the Bodin court are highly similar to those found in Louisiana law. See 462 F.3d at 489.

[6] For instance, Mr. Pickett's social worker expressed her desire to contact Adult Protective Services "if a discharge address can be confirmed." (Doc. 21-2, Exh. A, p. 146). This concern, according to the social worker, was rooted in questioning by staff members as to "the care he receives when he leaves the facility." (Doc. 21-2, Exh. A, p. 146). Additionally, a treating orthopedist stated: "I have a real concern that this patient is not competent to manage his medical conditions." (Doc. 21-2, Exh. A, p. 131). While the orthopedist submitted a declaration which explained that it was his duty to

reasonably should have been, aware of the dangerous living conditions and medical conditions being provided to Mr. Pickett by Whitten and Joffrion, who Ms. Pickett contends were VAMC Alexandria employees. These allegations may or may not ultimately support a claim that the government failed to protect Mr. Pickett from foreseeable harms, including the alleged intentional torts committed by Whitten and Joffrion. All that matters for purposes of our ruling on this motion is that the theories of liability do not contravene the relevant exception to the FTCA. Thus, we do, for the time being, retain subject matter jurisdiction to determine the plaintiff's intentional tort claims.

The Court is certainly not condemning any decisions made by medical staff members treating Mr. Pickett before his death at this point. Considering the evidence submitted to us by the government, those decisions may have been sound under the circumstances of this case. At this juncture, however, we simply hold that viable, and supportable, theories of liability exist which may be asserted under the strictures if the FTCA. To clarify, Ms. Whitten may potentially recover for the damages caused by Whitten and Joffrion's alleged intentional torts via a theory of negligence. Therefore, as to this point, the government's motion will be DENIED.

E. **Within the Scope of Employment**

Under the FTCA, the district court is vested with jurisdiction to adjudicate

> claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while

---

express that opinion to the attending physician, we simply note that concerns about Mr. Pickett's competency did exist.

11

>acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C.A. § 1346(b)(1). Like the issue of independent duties owed to a plaintiff, the question of whether an employee is acting within the course and scope of federal employment for purposes of the FTCA " is governed by the law of the state in which the wrongful act occurred." Bodin, 462 F.3d at 484; accord Villafranca v. United States, 587 F.3d 257, 260 (5th Cir. 2009) ("Liability under the FTCA is determined 'in accordance with the law of the place where the act or omission occurred.'") (quoting 28 U.S.C. § 1346(b)). Thus, Louisiana law applies to this question. Louisiana courts will consider the following non-exhaustive list of factors in determining whether an employee's acts fall within the scope of employment:

>the payment of wages by the employer; the employer's power of control; the employee's duty to perform the act in question; the time, place and purpose of the act in relation to the employment; the relationship between the employee's act and the employer's business; the benefits received by the employer from the act; the employee's motivation for performing the act; and the employer's reasonable expectation that the employee would perform the act.

Davis v. Green, 5 So. 3d 291, 297 (La. App. 2d Cir. 2009).

### 1. *The Individual Defendants*

First, we must consider whether the alleged negligent acts of the nurses, Whitten and Joffrion, occurred during the course of their federal employment. Once again, Whitten remains a named defendant, while Joffrion and Ballot have been dismissed from the lawsuit.

The government contended in its motion that "Joffrion is not now, nor has she

12

ever been a VA employee." (Doc. 17-1, pp. 1-2). That contention was not refuted, through argument or evidence, by Ms. Pickett in her response. In the absence of countervailing assertion, we are constrained to find that any actions by Joffrion relevant to the claims in this case were not taken in the course of federal employment. Therefore, as to any possible actions of Joffrion allegedly committed during the scope of her federal employment, the government's motion to dismiss will be GRANTED.

However, the government acknowledges that Whitten was a VAMC Alexandria Employee at the time of Mr. Pickett's death. The government contends that her removal of Mr. Pickett from the VAMC, or her provision of a residence and continuing care to him, would have been extra-employment activities. The government attaches a declaration of the Chief of Staff at the VAMC Alexandria, which states that "[i]f Ms. Pearlie Whitten allowed a VA patient to live with her at her private residence, such action on the part of Ms. Pearlie Whitten would have been outside the course and scope of her VA duties as a nursing assistant." (Doc. 17-2, Exh. A).

This statement is first, however, a misplaced legal conclusion. The Court must determine whether an employee's actions were undertaken within the scope of employment in light of the particular facts of each case. Armand v. Lachney, 921 So. 2d 1196, 1198 (La. App. 3d Cir. 2006). As noted above, a variety of factors must be considered in order to properly make this fact-intensive determination. The declaration submitted to the government merely states that the Chief of Staff is

aware of no authorization given to Whitten to remove Mr. Pickett from the VAMC Alexandria, or to care for him at the home, and that "taking patients home to live with her" was not within her "duties." (Doc. 17-2, Exh. A). This, however, does not definitively answer the legal question presented to the Court. In fact, no other properly considered evidence, aside from this declaration, squarely addresses the factors cited above. At this early stage, the Court has little or no detailed evidence clarifying the circumstances surrounding Mr. Pickett's discharges, treatment regimen, or dealings with VAMC Alexandria staff members, or Whitten's interactions or arrangements with Mr. Pickett, her co-workers, or other patients. The government's motion on this point will be DENIED.

### 2. *Other VAMC Alexandria Employees*

Finally, Ms. Pickett claims that the other employees of the VAMC Alexandria failed to take action to protect Mr. Pickett, given his tenuous physical and mental condition. Essentially, Ms. Pickett claims that these other employees failed to intervene on Mr. Pickett's behalf to safeguard his medical condition or object to the living conditions and medical care being provided by Whitten and Joffrion.

Once again, the Bodin decision is instructive, as the Fifth Circuit in that case found that VA employees "failed to intervene" in some way to protect patients from a psychiatrist on staff at the VAMC. 462 F.3d at 487. Moreover, "VA officials had received prior complaints that [the psychiatrist] had sexually abused patients. . . . [but] nevertheless permitted [the psychiatrist] to continue his work." Id. The court noted that "[t]here was no dispute that [the psychiatrist's] coworkers were acting

14

within the scope of their employment when they failed to intervene." Id.

Here, there is likewise no dispute that the VAMC Alexandria employees evaluating Mr. Pickett's condition were acting within the scope of their employment. At present, there is nothing before the Court indicating that other VAMC-Alexandria employees were aware of Mr. Pickett's exact living conditions, or that Whitten and Joffrion may have been providing him with medical care. But, to whatever extent their actions may have contravened a duty owed to Mr. Pickett, the other VAMC Alexandria employees were acting within the course and scope of their employment at the time they evaluated and made decisions regarding Mr. Pickett. Therefore, the government's motion as to this point will be DENIED.

### III. Conclusion

For the foregoing reasons, the government's motion will be GRANTED IN PART only: (1) to the extent that Ms. Pickett's claims seek to impose liability upon the government for the intentional torts of Whitten and Joffrion through their alleged employment relationships with the government; and (2) to the extent that the plaintiff seeks to impose liability upon the government for any acts of Joffrion committed during the scope of her purported federal employment. The rest of Ms. Pickett's claims will remain pending at this point.

SIGNED on this 31st day of March, 2010 at Alexandria, Louisiana.

DEE D. DRELL
UNITED STATES DISTRICT JUDGE